# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KEISHA M. SUTHERLAND, | : | |
| Plaintiff, | : | |
| v. | : | Civ. No. 16-184-LPS |
| NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security, | : | |
| Defendant. | : | |

Gary L. Smith, Esq., Newark, DE.

    Attorney for Plaintiff

David C. Weiss, United States Attorney, and Heather Benderson, Special Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, Philadelphia, PA.

Of Counsel: Nora Koch, Regional Chief Counsel, and Katie M. Gaughan, Assistant Regional Counsel, of the Social Security Administration, Philadelphia, PA.

    Attorneys for Defendant

## MEMORANDUM OPINION

September 22, 2017
Wilmington, Delaware

---

[1]Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for former Commissioner Carolyn W. Colvin as defendant in this suit.

STARK, U.S. District Judge:

## I. INTRODUCTION

Plaintiff Keisha M. Sutherland ("Sutherland" or "Plaintiff") appeals the decision of Defendant Nancy A. Berryhill, the Acting Commissioner of Social Security ("the Commissioner" or "Defendant"), denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, respectively. The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

Before the Court are the parties' cross-motions for summary judgment. (D.I. 12, 16) Plaintiff Sutherland requests the Court find that the ALJ must accept the unrebutted opinion of Sutherland's treating doctor, Dr. Habibah Mosley, and find that Sutherland has been disabled from her alleged onset date of April 6, 2007. (D.I. 13 at 11) The Commissioner requests that the Court affirm the decision denying Sutherland's claim for DIB and SSI. (D.I. 17 at 14)

For the reasons stated below, the Court will deny Plaintiff's motion for summary judgment and grant Defendant's motion.

## II. BACKGROUND

### A. Procedural History

Sutherland filed her initial application for DIB and SSI on July 23, 2007, alleging an onset date of April 6, 2007. (D.I. 8 ("Tr.") at 503-04) After a hearing, an Administrative Law Judge ("ALJ") issued a decision on April 3, 2009, finding Sutherland not disabled. (*Id.* at 503) On appeal, the Appeals Council affirmed the 2009 decision, leading Sutherland to appeal to this Court. (*Id.*)

On September 8, 2010, while Sutherland's 2009 appeal was pending with this Court,

Sutherland filed an amended application for DIB and SSI, amending her alleged onset date to April 9, 2009. (*Id.* at 503-04) Sutherland's amended claims were denied, and a hearing was held on March 7, 2012, before a different ALJ. (*Id.* at 503) This ALJ issued a decision finding Sutherland was not disabled, and Sutherland appealed to the Appeals Council. (*Id.*)

On July 13, 2012, this Court granted Sutherland's motion for summary judgment and remanded the 2009 case. (*Id.*; *see also Simmonds v. Astrue*, 872 F. Supp. 2d 351 (D. Del. 2012)) On October 25, 2013, the Appeals Council vacated the 2009 decision and remanded it for further consideration of a treating source opinion, directed that Sutherland's 2012 appeal be associated with the 2009 appeal, and that a new decision be issued on the associated claims. (Tr. at 503)

A remand hearing was held on July 24, 2014, at which both Sutherland and impartial vocational expert Mitchell A. Schmidt testified. (*Id.*) On August 25, 2014, the ALJ issued a decision finding Sutherland was not disabled within the meaning of the Social Security Act from Sutherland's initial alleged onset date of April 2007 through the date of her decision. (*Id.* at 503-19) The Appeals Council denied Sutherland's request for review, and Sutherland appealed to this Court. (*Id.* at 309-13; D.I. 17 at 2)

**B.    Factual History**

    **1.    Background**

At the time she applied for DIB and SSI, Sutherland was a 31 year-old divorced mother of two young daughters. (Tr. at 26; D.I. 13 at 2) Sutherland has a high school education, completed three-and-a-half years of college, is a former Army Reservist, and has been trained as a Licensed Practical Nurse. (Tr. at 26-28) She last worked in April 2007 as a lead/charge nurse in a nursing home. (*Id.* at 29-30) While Sutherland testified that she stopped working in April 2007 because

2

she "started getting confused" (*id.* at 29), the record also shows that Sutherland told Frederick Kurz, Ph.D., the consultative psychological examiner, that she stopped working because she was not getting enough hours at work and was denied a vacation. (D.I. 17 at 3; *see also* Tr. at 224)

At the 2009 and 2012 ALJ hearings, Sutherland testified that she was able to assist her daughters with their homework and personal hygiene, prepare their meals, walk them to the park, and drive them to school. (Tr. at 149, 361, 364-66) Sutherland was also able to wash dishes, do laundry, dust, sweep, clean, and shop for groceries, as well as attend religious services on Sundays and visit with friends and family. (*Id.* at 152-54, 364-66) In addition, at the 2012 and 2014 ALJ hearings, Sutherland testified that she helped care for her housebound grandfather, with whom she lived, that she was able to drive a car, and that she had taken multiple trips to Jamaica during the alleged period of disability. (*Id.* at 349, 367, 400-02)

### 2. Medical History

Sutherland's relevant medical history began on April 6, 2007, the date Sutherland testified she first "started getting confused" and "inexplicably stopped going to work." (Tr. at 29; D.I. 13 at 2) Sutherland subsequently had a ten-day hospital stay in July 2007 due to an episode of confusion, after police officers found her partially clothed and unable to explain the whereabouts of her children. (Tr. at 202-22, 269-76; D.I. 17 at 4; D.I. 13 at 3) Sutherland was admitted for acute exacerbation of psychotic illness and medication noncompliance with a global assessment of functioning (GAF) score of 30, indicating behavior that is considerably influenced by delusions or hallucinations, serious impairment in communication or judgment, or inability to function in almost all areas. (Tr. at 203; D.I. 13 at 3) She was later discharged in stable condition with a diagnosis of bipolar affective disorder (depressed). (Tr. at 202-03)

On August 8, 2007, Sutherland began treatment with psychiatrist Habibah E. Mosley, D.O. (*Id.* at 284-86) During her initial visit, Dr. Mosley reported that Sutherland appeared kempt, pleasant, cooperative, alert, and oriented to person, place, and time. (*Id.* at 285) Dr. Mosley also reported that Sutherland had no hallucinations or suicidal ideations, and assessed a GAF score of 50, indicating serious symptoms or serious impairment in social, occupational, or school functioning. (*Id.* at 285-86) Sutherland was diagnosed with bipolar disorder with psychotic features, and prescribed medication and continuing therapy treatment. (*Id.* at 286)

On October 22, 2007, Sutherland underwent a neurological evaluation with Michael J. Carunchio, Jr., M.D. (*Id.* at 249-52) Dr. Carunchio documented that Sutherland appeared alert and oriented to person, place, and time, and that her recent/remote memory, attention, language, and fund of knowledge were all normal. (*Id.* at 251) Dr. Carunchio noted that he was uncertain as to the etiology of Sutherland's "extended periods of behavior-confusion," and that he was "unable to glean specifics to suggest an epileptogenic component." (*Id.*)

While at the hospital, on November 14, 2007, Sutherland had an MRI scan of her brain, which showed no abnormality. (*Id.* at 246, 248) After being discharged from the hospital, and during a follow-up visit on November 29, 2007, Dr. Carunchio noted again that Sutherland was alert, had normal speech and comprehension, and that he saw no indication of a neurologic disturbance. (*Id.* at 246)

Sutherland continued seeing Dr. Mosley on a monthly basis, and on November 7, 2008, Dr. Mosley noted that Sutherland had stopped taking her medication, had not slept for two days, had a decreased appetite, and was disoriented. (*Id.* at 298, 301) Sutherland was subsequently admitted to the hospital again, for a stay that again lasted ten days. (*Id.* at 287-96) Upon

4

psychiatric examination, Sutherland was alert, oriented to place and person, and had average intellectual functioning, but was assessed to have a GAF score of 15, indicating some danger of hurting oneself or others or gross impairment in communication. (*Id.* at 296)

On December 1, 2008, Dr. Mosley completed a mental impairment questionnaire, noting that Sutherland had responded well to treatment and indicating that Sutherland was limited-but-satisfactory in her ability to remember work-like procedures, maintain regular attendance and be punctual, and ask simple questions or request assistance. (*Id.* at 254-56) Dr. Mosley also indicated that Sutherland was seriously limited, but not precluded, in her ability to understand and carry out simple instructions, maintain attention for two-hour segments, sustain an ordinary routine, work with others, make simple work-related decisions, complete a normal workday and workweek, perform at a consistent pace, respond appropriately to changes in a routine work setting, and be aware of normal hazards. (*Id.* at 256) Dr. Mosley found Sutherland markedly limited and unable to meet competitive standards in accepting instructions and responding appropriately to criticism from supervisors, getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, and dealing with normal work stress. (*Id.*) Dr. Mosley noted that Sutherland was moderately limited in performing the activities of daily living, would have moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace, and had three, two-week episodes of decompensation within a twelve-month period. (*Id.* at 257) Dr. Mosley ultimately diagnosed Sutherland with bipolar disorder with psychotic features, and assessed a GAF score of 40, indicating some impairment in reality testing or communication, or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. (*Id.* at 254) Dr.

5

Mosley concluded that Sutherland would be absent from work more than four days a month. (*Id.* at 260)

In 2009, Sutherland was treated at the Wilmington Community Mental Health Center by Bindu Koshy, M.D. (D.I. 13 at 7; *see* Tr. at 835) Dr. Koshy referred Sutherland to Nidia DeYanez, M.D., whom Sutherland was treated by from January 26, 2010 to February 16, 2012. (Tr. at 835-41) Dr. DeYanez found Sutherland friendly and cooperative, but also tense and guarded, and noted that Sutherland's sensorial memory and orientation were intact, her judgment was fair, and her intellectual functioning was average. (*Id.* at 836) During these two years of treatment, Dr. DeYanez consistently assessed a GAF score of 60, indicating moderate symptoms. (*Id.* at 836, 943) In addition, Dr. DeYanez noted that when Sutherland was medication compliant, she was stable. (*Id.* at 837)

From June 4, 2012 to July 15, 2012, Sutherland was treated by Kendall Dupree, M.D. and therapist Mariella Roberts. (D.I. 13 at 7; Tr. at 955-90, 1067-70) Ms. Roberts noted that Sutherland was well-oriented in all spheres, cooperative, and interested, but also anxious, appeared preoccupied with external stressors, and showed poor judgment. (Tr. at 957) Ms. Roberts also reported discussing with Sutherland her poor compliance with medicine, and relatedly, Sutherland's well-being when she was medication compliant. (*Id.* at 958-59) Dr. Dupree's notes similarly reflected that Sutherland did well when she was medication compliant. (*Id.* at 983-88)

### 3. Consultative Examination and Opinion Evidence

On October 30, 2007, Sutherland had a consultative examination with Frederick Kurz, Ph.D. (Tr. 223-30) Dr. Kurz noted that Sutherland's affect was constricted, but that there were

no overt indications of depression or anxiety. (*Id.* at 224) Sutherland was oriented to person, place, and time, her attention was adequate, and her higher cognitive skills were in tact. (*Id.* at 225) Dr. Kurz diagnosed Sutherland with psychosis NOS and assessed her GAF score to be 65, indicating mild symptoms. (*Id.* at 225-26) Similar to Dr. DeYanez and Dr. Dupree's findings, Dr. Kurz noted that "as long as Ms. Sutherland is compliant with her medications," her thought disorder could be "stabilized and controlled." (*Id.* at 225)

That same day, Dr. Kurz completed a functional capacities evaluation of Sutherland and opined that she was moderately limited in her ability to relate to other people, partake in daily activities, carry out instructions under ordinary supervision, sustain work performance and attendance in a normal work setting, and cope with pressures of ordinary work. (*Id.* at 228-29) Dr. Kurz found Sutherland to be mildly limited in her ability to understand simple instructions and perform routine, repetitive tasks under ordinary supervision. (*Id.*)

On November 1, 2007, Douglas Fugate, Ph.D., a state agency psychologist, conducted a psychiatric review of Sutherland, concluding that she had a psychotic disorder, NOS, specifically, bipolar disorder and depression. (Tr. at 231, 233, 244) Dr. Fugate found Sutherland had mild limitation in her restriction of daily living and moderate difficulty in maintaining social functioning and maintaining concentration, persistence, or pace. (*Id.* at 239) Dr. Fugate noted Sutherland's medication noncompliance, but also recorded that "[i]t appears that when the [client] takes her medication as prescribed her psychiatric symptoms are controlled." (*Id.* at 244) Dr. Fugate ultimately assessed Sutherland to have an estimated GAF of 65, indicating mild symptoms, and noted that she was "able to meet the basic mental demands of simple work." (*Id.* at 244)

7

On April 29, 2008, Pedro M. Ferreira, Ph.D., a state agency psychologist, conducted a review of the medical evidence of record and affirmed the opinion of Dr. Fugate. (Tr. at 253)

**C.    The ALJ's Findings**

On August 25, 2014, the ALJ issued the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.
>
> 2. The claimant has not engaged in substantial gainful activity since April 6, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairment: bipolar disorder, depression, and anxiety (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she is limited to simple, unskilled work with only occasional contact with co-workers or the general public; work that is essentially isolated with only occasional supervision; and work that is low stress, defined as involving only occasional changes in the work environment.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416. 965).
>
> 7. The claimant was born on November 2, 1975 and was 31 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (20 CFR 404.1563 and 416.963).
>
> 8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

8

> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from April 6, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. at 506-19)

## III.   LEGAL STANDARDS

### A.   Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). A party asserting that a fact cannot be – or, alternatively, is – genuinely disputed must support its assertion either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podobnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating that party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

**B.    Review of the ALJ's Findings**

The Court must uphold the Commissioner's factual decisions if they are supported by

10

"substantial evidence." *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). "Substantial evidence" means less than a preponderance of the evidence but more than a mere scintilla of evidence. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). As the United States Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

In determining whether substantial evidence supports the Commissioner's findings, the Court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of record. *See Monsour*, 806 F.2d at 1190-91. The Court's review is limited to the evidence that was actually presented to the ALJ. *See Matthews v. Apfel*, 239 F.3d 589, 593-95 (3d Cir. 2001). However, evidence that was not submitted to the ALJ can be considered by the Appeals Council or the District Court as a basis for remanding the matter to the Commissioner for further proceedings, pursuant to the sixth sentence of 42 U.S.C. § 405(g). *See Matthews*, 239 F.3d at 592. "Credibility determinations are the province of the ALJ and only should be disturbed on review if not supported by substantial evidence." *Gonzalez v. Astrue*, 537 F. Supp. 2d 644, 657 (D. Del. 2008) (internal quotation marks omitted).

The Third Circuit has explained that a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence, particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.

11

1983). Thus, the inquiry is not whether the Court would have made the same determination but, rather, whether the Commissioner's conclusion was reasonable. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Even if the reviewing Court would have decided the case differently, it must give deference to the ALJ and affirm the Commissioner's decision if it is supported by substantial evidence. *See Monsour*, 806 F.2d at 1190-91.

## IV. DISCUSSION

### A. Disability Determination Process

Title II of the Social Security Act, 42 U.S.C. § 423(a)(1)(D), "provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Title XVI of the Social Security Act provides for the payment of disability benefits to indigent persons under the SSI program. 42 U.S.C. § 1382(a). A "disability" is defined for purposes of SSI and DIB as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Barnhart v. Thomas*, 540 U.S. 20, 21-23 (2003).

In determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis. *See* 20 C.F.R. §§ 404.1520, 416.920; *Plummer v. Apfel,* 186 F.3d

12

422, 427-28 (3d Cir. 1999). If a finding of disability or nondisability can be made at any point in the sequential process, the Commissioner will not review the claim further. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I) (mandating finding of nondisability when claimant is engaged in substantial gainful activity). If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a combination of impairments that is severe. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii) (mandating finding of nondisability when claimant's impairments are not severe), 416.920(a)(4)(ii). If the claimant's impairments are severe, the Commissioner, at step three, compares the claimant's impairments to a list of impairments that are presumed severe enough to preclude any gainful work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Plummer,* 186 F.3d at 428. When a claimant's impairment or its equivalent matches an impairment in the listing, the claimant is presumed disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If a claimant's impairment, either singly or in combination, fails to meet or medically equal any listing, the analysis continues to steps four and five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four, the Commissioner determines whether the claimant retains the RFC to perform his past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv) (stating that claimant is not disabled if claimant is able to return to past relevant work); *Plummer,* 186 F.3d at 428. A claimant's RFC is "that which [the] individual is still able to do despite the limitations caused by his or her impairment(s)." *Fargnoli v. Halter,* 247 F.3d 34, 40 (3d Cir.

13

2001). "The claimant bears the burden of demonstrating an inability to return to her past relevant work." *Plummer,* 186 F.3d at 428.

If the claimant is unable to return to her past relevant work, step five requires the Commissioner to determine whether the claimant's impairments preclude her from adjusting to any other available work. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (mandating finding of nondisability when claimant can adjust to other work); *Plummer,* 186 F.3d at 428. At this last step, the burden is on the Commissioner to show that the claimant is capable of performing other available work before denying disability benefits. *See Plummer,* 186 F.3d at 428. In other words, the Commissioner must prove that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Id.* In making this determination, the ALJ must analyze the cumulative effect of all of the claimant's impairments. *See id.* At this step, the ALJ often seeks the assistance of a VE. *See id.*

**B. Issues Raised on Appeal**

On appeal, Sutherland raises four arguments: (1) the ALJ improperly weighed the opinions of treating psychiatrist, Dr. DeYanez, and examining consultant, Dr. Kurz; (2) the ALJ failed to distinguish between Sutherland's ability to function in her home environment and her ability to function in the more demanding, stressful environment of a normal workplace; (3) the ALJ failed to obtain the consultative examination recommended by the Appeals Council, which would have been needed to rebut the opinions of Sutherland's treating psychiatrist, Dr. Mosley; and (4) the ALJ improperly "mashed up non-contemporaneous evidence" in deciding that Sutherland was not disabled for the entire alleged period of disability, rather than determining

14

whether Sutherland was disabled for any continuous one-year period between the alleged onset date and the date of the July 2014 hearing. (D.I. 13 at 8-9)

The Commissioner responds that, first, some portions of Dr. Mosley's opinion – including that Sutherland was moderately limited in activities of daily living, had a GAF score of 40, and would miss more than four days of work a month – were contradicted by other substantial evidence in the record, and the portions of Dr. Mosley's opinion that were supported by the record were given appropriate weight. (D.I. 17 at 12-13) Next, the Commissioner asserts that the ALJ's opinion was properly based on the opinions of Dr. DeYanez and the state agency psychologists' and consultative examiner's opinions. (*Id.*) Finally, the Commissioner contends that Sutherland's ability to "engage in a wide array of activities," including caring for her grandfather and two children, traveling to Jamaica, and conducting ordinary household chores, all supported the ALJ's assessment. (*Id.* at 14)

As detailed further below, the Court agrees with the Commissioner and finds that substantial evidence supports the ALJ's findings.

### 1. Weight of Opinions

Sutherland contends that the ALJ improperly weighed the opinions of her treating psychiatrist, Dr. DeYanez, and the examining consultant, Dr. Kurz. In reviewing the ALJ's analysis, it is not for the Court to re-weigh the medical opinions in the record. *See Gonzalez v. Astrue*, 537 F. Supp. 2d 644, 659 (D. Del. 2008). Rather, the Court must determine whether substantial evidence supports the ALJ's weighing of those opinions. *See id.*

First, Sutherland contends that Dr. Kurz's assessment was given too much weight, as it was only based on a one-time examination without the benefit of review of Sutherland's entire

15

medical record. (D.I. 13 at 9) But as a state agency psychological consultant, Dr. Kurz is considered an expert in the evaluation of medical issues in disability claims, and his opinion on the severity of Sutherland's condition must be considered by the ALJ. *See* 20 C.F.R. 404.1527(e)(2)(i), 416.927(e)(2)(i). Accordingly, the fact that Dr. Kurz conducted only one examination does not automatically reduce the weight his opinion may be given. Furthermore, the ALJ evaluated Dr. Kurz's opinion – including his mental status examination, diagnosis, and functional capacities evaluation form – in conjunction with the entire expanded record. The ALJ did not base her determination entirely on Dr. Kurz's assessment, but rather the combination of assessments from Sutherland's treating and non-treating psychiatrists as well as what was reflected in the record. The ALJ's determination to afford greater weight to Dr. Kurz's opinion based on its support in the medical record is supported by substantial evidence.

Next, Sutherland argues that the ALJ's reliance on Dr. DeYanez's medical notes and mental impairment questionnaire was misplaced. (D.I. 13 at 9-10) Regarding Dr. DeYanez's medical notes that Sutherland was in a stable psychiatric condition, Sutherland contends that "[n]otations that an affective disorder is stable and well-controlled under medication does not support a medical conclusion that a patient can return to work." (*Id.*) While these notations alone may be insufficient to support a conclusion that Sutherland can return to work, the ALJ also evaluated Dr. DeYanez's opinion on Sutherland's ability to perform work-related activities, including Sutherland's ability to follow directions, be punctual, and keep a schedule, as well as other information in the treatment records. Therefore, the ALJ's determination to give considerable weight to this portion of Dr. DeYanez's opinion is supported by substantial evidence.

16

Regarding the questionnaire, Sutherland contends that the ALJ gave it too much weight because it was not completed by Dr. DeYanez and Dr. DeYanez did not express an opinion on Sutherland's highest GAF score or various of her abilities/limitations. (D.I. 13 at 10) The ALJ, however, did not give controlling weight to this portion of Dr. DeYanez's opinion, noting that "viewing the claimant's longitudinal mental health treatment history, she is overall more limited than Dr. DeYanez found in February 2012." (Tr. at 515) Therefore, even if the questionnaire did not mention each of Sutherland's abilities or limitations, the Court finds that the ALJ considered the entire record of Sutherland's medical history along with the questionnaire, and only gave weight to the portions that were supported by the record.[2]

### 2. Ability to Function in a Workplace

Sutherland contends that the ALJ failed to distinguish between Sutherland's abilities during a mental status examination or at home and her abilities to function in a work environment. (D.I. 13 at 9) The ALJ, however, evaluated Sutherland's treating psychiatrist Dr. Mosley's opinion regarding Sutherland's ability to carry out work-related tasks, and compared Dr. Mosley's opinion to the objective mental status record, finding it inconsistent with substantial evidence in the record. (Tr. at 513-14) The ALJ gave some weight to the "serious" limitations noted by Dr. Mosley, including Sutherland's ability to work with detailed instructions, deal with changes in the work setting and job stress, and interact with co-workers, supervisors, and the general public, as those opinions were supported by the record. (*Id.*) These

---

[2] While Sutherland contends that Dr. DeYanez also completed a "Psychiatric Assessment Form" that was not mentioned in the ALJ's decision, "consideration of all the evidence does not mean that the ALJ must explicitly refer to each and every exhibit in the record." *Mays v. Barnhart*, 227 F. Supp. 2d 443, 448 (E.D. Pa. 2002), *aff'd* 2003 WL 22430186 (3d Cir. Oct. 27, 2003).

17

limitations were accounted for in Sutherland's residual functional capacity. (*Id.*)

Accordingly, the Court finds that the ALJ did appropriately consider the claimant's abilities and limitations as related to employment in a workplace.

### 3. Supplemental Consultative Evaluation

Sutherland contests the ALJ's decision not to order an additional consultative evaluation to rebut Dr. Mosley's opinion. (D.I. 13 at 11) But the decision to obtain an additional evaluation was left to the ALJ's discretion.[3] In addition, the record shows that at the July 24, 2014 hearing, the ALJ gave Sutherland's counsel "the opportunity to weigh in" on the additional examination, and counsel represented to the Court that "generally . . . [consultative evaluations are] not very helpful" and that he would leave the decision to the discretion of the ALJ in determining whether it was necessary. (D.I. 17 at 6 n.1; Tr. at 386) Accordingly, the ALJ did not err in choosing not to order a supplemental consultative evaluation.

### 4. Failure to Parse Evidence

Finally, Sutherland asserts that the ALJ erred in "mash[ing] up non-contemporaneous evidence" in deciding that Sutherland was not disabled for the entire alleged period (2007-2014) rather than determining whether Sutherland was disabled for any continuous one-year period within that time frame. (D.I. 13 at 11) The Court disagrees. The ALJ evaluated the medical evidence chronologically, affording weight to the opinions that were supported by the coexisting medical record. There is no evidence that the ALJ failed to evaluate discrete periods of disability.

---

[3] In its remand Order, the Appeals Council instructed the ALJ to "[u]pdate the medical evidence" and that "[t]he additional evidence may include, if warranted and available, a consultative examination." (Tr. at 498)

18

## V. CONCLUSION

For the reasons given above, the Court will grant Defendant's motion for summary judgment and deny Plaintiff's motion for summary judgment. An appropriate Order follows.